# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

---

**BRIAN RENON SHABAZZ,**

        **Plaintiff,**

**v.**                                  **Case No. 11-315**

**ARANDELL CORPORATION,**

        **Defendant.**

---

## DECISION AND ORDER

---

This Decision and Order addresses Defendant Arandell Corporation's ("Arandell") motion, pursuant to Rule 37(b)(2)(A)(v) of the Federal Rules of Civil Procedure and Civil Local Rule 37 (E.D. Wis.), for dismissal of this action due to pro se Plaintiff Brian Renon Shabazz's ("Shabazz") violation of the Court's February 15, 2012, Order ("Order"). Alternatively, Arandell requests entry of an order compelling Shabazz to comply with that Order, including a directive that Shabazz respond in full to Arandell's written discovery demands.

Specifically, Arandell requests an order compelling Shabazz to produce all of the documents sought by its first request for production of documents, to fully execute the medical authorizations sought by that request, and to provide complete answers to interrogatories numbers three, five, six, eight, nine, and fourteen of its first set of interrogatories. Arandell further asks that the order require Shabazz to reappear for his

deposition, answer Arandell's deposition questions that he previously refused to answer, and to provide any additional testimony warranted by his supplemental written discovery responses. In addition, pursuant to Rule 37(b)(2)(C), Arandell requests payment of its expenses, including attorneys' fees, caused by Shabazz's failure to comply with the Order.

The time has passed for Shabazz to respond to the Arandell's motion. *See* Civil Local Rule 7(b). None has been filed.

Even though plaintiffs who represent themselves are given some leeway, *see Haines v. Kerner*, 404 U.S. 519, 520-21 (1972), they must still follow the rules of procedure, *Downs v. Westphal*, 78 F.3d 1252, 1257 (7th Cir. 1994) (citing *Jones v. Phipps*, 39 F.3d 158, 163 (7th Cir. 1994)). "[B]eing a pro se litigant does not give a party unbridled license to disregard clearly communicated court orders. It does not give the pro se litigant the discretion to choose which of the court's rules and orders it will follow, and which it will wilfully disregard." *Downs*, 78 F.3d at 1257.

Discovery is a mechanism to avoid surprise, disclose the nature of the controversy, narrow the contested issues, and provide the parties a means by which to prepare for trial. 8 Charles Alan Wright, Arthur R. Miller & Richard L. Marcus, *Federal Practice and Procedure* § 2001, 22-23 (2010). Any party to a civil action has an obligation to respond to discovery requests presented by the opposing party. The federal discovery rules are liberal in order to assist in the preparation for trial and settlement of litigated disputes. *See Bond v. Utreras*, 585 F.3d 1061, 1075 (7th Cir. 2009). The Court's discovery processes and rules are

2

used to require litigants to produce otherwise private information. *See id.* While a party may object to discovery requests on the ground of relevance, that term is broadly defined under Federal Rule of Civil Procedure 26.

Rule 26(b)(1) allows parties to discover information "regarding any nonprivileged matter that is relevant to any party's claim or defense. Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1). *See Nw. Mem'l Hosp. v. Ashcroft*, 362 F.3d 923, 930 (7th Cir. 2004). District courts have broad discretion in discovery matters. *Packman v. Chi. Tribune Co.*, 267 F.3d 628, 646 (7th Cir. 2001). "Although there is a strong public policy in favor of disclosure of relevant materials, Rule 26(b)(2) of the Federal Rules of Civil Procedure empowers district courts to limit the scope of discovery if 'the discovery sought is unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive.'" *Patterson v. Avery Dennison Corp.,* 281 F.3d 676, 681 (7th Cir. 2002).

Rule 37 authorizes a Court to sanction a party for "failing to obey [this Court's Order] to provide or permit discovery." Fed. R. Civ. P 37(b)(2)(A); *See EEOC v. Kenosha Unified Sch. Dist. No. 1*, 620 F.2d 1220, 1226 (7th Cir. 1980) (awarding sanctions under Rule 37 ("[T]he trial judge must exercise his discretion to protect the discovery process and integrity of the court[.]").) Specifically, Rule 37(b)(2)(A) states:

3

If a party . . . – fails to obey an order to provide or permit discovery, including an order under Rule 26(f), 35, or 37(a), the court where the action is pending may issue further just orders.

 They may include the following:

(i) directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims;

(ii) prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence;

(iii) striking pleadings in whole or in part;

(iv) staying further proceedings until the order is obeyed;

(v) dismissing the action or proceeding in whole or in part;

(vi) rendering a default judgment against the disobedient party; or

(vii) treating as contempt of court the failure to obey any order except an order to submit to a physical or mental examination.

Rule 37(b)(2)(C) also states "[i]nstead of or in addition to the orders above, the court must order the disobedient party . . . to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust."

A district court's entry of sanctions is reviewed for abuse of discretion, while factual findings are reviewed for clear error. *In re: Thomas Consol. Indus.*, 456 F.3d 719, 724 (7th Cir. 2006). Rule 37 requires a finding of willfulness, bad faith or fault on the part of the defaulting party. *Brown v. Columbia Sussex Corp.* 664 F.3d 182, 190 (7th Cir. 2011) (citing

4

*Maynard v. Nygren*, 332 F.3d 462, 467 (7th Cir. 2003) and *Bolanowski v. GMRI, Inc.,* 178 Fed.Appx. 579, 581 (7th Cir. 2006) ("Rule 37(b)(2)'s standard is willfulness, bad faith or fault.")). Under Rule 41(b), a case should only be dismissed when "there is a clear record of delay or contumacious conduct, or when other less drastic sanctions have proven unavailing." *Maynard v. Nygren*, 332 F.3d 462, 467 (7th Cir. 2003) (quoting *Williams v. Chi. Bd. of Educ.*, 155 F.3d 853, 857 (7th Cir.1998)).

## FACTUAL BACKGROUND

Shabazz, an employee of Arandell, complained to other Arandell personnel regarding incidents of work-place harassment during 2010. (*See* Compl. ¶¶ 2-4.) One incident involved being slapped in the face by a co-worker. (*Id.* at ¶ 1[1] [unnumbered].) The incident was reported to the Menomonee Falls Police Department. (*Id.*)

On December 21, 2010, Arandell terminated Shabazz's employment. (*Id.*) Shabazz subsequently filed a discrimination charge with the United States Equal Employment Opportunity Commission ("EEOC') and received a right to sue letter.

Shabazz commenced this action by filing a verified Complaint stating that he was subjected to a hostile work environment and discriminated against while he was employed at Arandell. His Complaint alleges a number of incidents that occurred during 2010.

By an April 6, 2011, Order, this Court granted Shabazz leave to proceed *in forma pauperis* on his Complaint against Arandell interpreting his Complaint as alleging

---

[1] Paragraph one of the Complaint, which is unnumbered, is divided into three paragraphs. However, Shabazz has numbered the subsequent paragraphs as two through four. The final paragraph is unnumbered.

5

violations of Title VII, 42 U.S.C. § 2000e-2(a)(1) *et seq.*, based on discrimination against him in the workplace and the termination of his employment based on his race. On August 17, 2011, following a scheduling conference with the parties, this Court entered a scheduling order to govern the proceedings in this action, which states that all discovery is to be presented in sufficient time so that discovery would be completed by February 29, 2012. On August 29, 2011, Shabazz filed an exhibit list with 38 exhibits attached.

On January 30, 2012, Arandell wrote the Court regarding a January 25, 2012, telephone call that it made to Shabazz to discuss his failures to respond to Arandell's written discovery demands and to appear for his deposition, despite Arandell's multiple reminders. Arandell indicated that, during the call, Shabazz said that he was "sick of" this federal action and did not intend to continue with it; and, instead, he would pursue his pending state law discrimination claims with the Wisconsin Equal Rights Division ("ERD"). Despite such statements, ultimately, Shabazz was non-committal about withdrawing this action. As a result, Arandell requested that the Court conduct a status conference.

Thereafter, during a February 14, 2012, telephone status conference with the parties, the Court established a revised May 1, 2012, discovery cutoff date. Shabazz participated actively in that conference and was cooperative.

The Order, memorializing the results of that conference, required Shabazz to provide answers to Arandell's written discovery demands by March 15, 2012, and to appear for his deposition when scheduled by Arandell. Shabazz was also advised that his failure to

6

respond to Arandell's written discovery requests or to appear at his deposition would result in dismissal of the action for lack of prosecution.

On March 15, 2012, Shabazz served his first set of answers to Arandell's first set of interrogatories. On March 23, 2012, Shabazz served his responses to Arandell's first set of requests for admissions. Shabazz did not serve any response to Arandell's first set of requests for production of documents.

Shabazz appeared for his deposition by 9:55 a.m. on April 24, 2012. (Jones. Decl. ¶ 32, Ex. F, 2.) (ECF No. 35, Attach. 6.) The deposition lasted until 4:29 p.m., and the deposition transcript exceeds 197 pages. (*See id*, Ex. F 2, 197.) During the deposition, Shabazz objected to about a dozen questions and did not answer them. (*See, e.g., id.*, Ex. F 7, 24-25.) At the deposition, Arandell instructed him that, as a general rule, regardless of whether he objected to a question, he would still be required to answer it. (*See id*., Ex. F, 6.)

On May 1, 2012, Arandell filed its motion to dismiss or compel compliance asserting that Shabazz should be sanctioned because he violated the Order by failing to respond to written discovery requests and obstructing his deposition by refusing to answer multiple questions. (ECF No. 34.) A partial transcript of Shabazz's deposition was filed in support of the motion.

## ANALYSIS

Arandell asserts that Shabazz has violated the Court's February 15, 2012, Order, and refused to cooperate with Arandell's discovery requests and, therefore, has forfeited his

7

right to pursue this action, citing numerous cases involving Rule 37 sanctions including *Locascio v. Teletype Corp.*, 694 F.2d 497, 499 (7th Cir. 1982); *Newman v. Metropolitan Pier & Exposition Authority*, 962 F.2d 589, 591 (7th Cir. 1992); and *Long v. Steepro*, 213 F.3d 983, 986 (7th Cir. 2000). Arandell also cites *Williams v. Chicago Board of Education*, 155 F.3d 853, 857 (7th Cir. 1998), noting that the Federal Rules of Civil Procedure Rule 41(b)'s failure to prosecute provision also provides grounds for dismissal when there has been a clear record of delay or contumacious conduct.

Having carefully reviewed the file and considered the circumstances of this action, the Court does not find a sufficient factual basis to establish willfulness, bad faith or fault by Shabazz or a "clear record" of conduct that would cause it to dismiss this action under either Rule 37 or Rule 41(b), respectively. Shabazz provided his response to the interrogatories on the stated deadline. He also responded to Arandell's request for admissions albeit eight days late. He also appeared at his deposition and largely cooperated with Arandell at that deposition. Dismissal of the action at this juncture is not warranted.

### Production of Documents and Medical Record Releases

Nonetheless, Shabazz violated the Order that required him to respond to Arandell's Rule 34 request for production of documents by March 15, 2012. With the exception of Arandell's medical record release forms which require revision, Arandell properly requested Shabazz disclose documents that fall within the scope of relevant materials as defined in Rule 26(b)(1). It was Shabazz's responsibility to produce the documents as

8

ordered. Civil litigation is not conducted by ambush. If Shabazz intends to further pursue this action, he must fully respond to Arandell's request for production and produce any relevant documents sought by that request of which he has possession or control by the deadline stated in this Decision and Order.

Arandell's medical record release forms require revision because they contain no temporal limitation. Arandell must revise its medical record release forms to limit the required disclosure of Shabazz's medical records to the period beginning January 1, 2002, through present. Shabazz must execute those revised medical record release forms by the stated deadline.

## Interrogatories

Arandell also asks the Court to compel Shabazz to provide complete answers to interrogatories numbers three, five, six, eight, nine and fourteen of its first set of interrogatories. In addressing the interrogatories at issue, the Court has grouped them by issue, instead of addressing them in strict numerical order.

Interrogatory number three asks Shabazz to identify all communications between him and Robert Jordan ("Jordan")[2] and any individual acting on behalf of Jordan concerning any facts that Shabazz alleged in his Complaint. Interrogatory number fourteen asks Shabazz to identify all persons who have provided information or document that he utilized in preparing the answers to Arandell's interrogatories. Shabazz objects to both interrogatories

---

[2]Apparently, Jordan was or is an employee of Arandell.

based on the common interest privilege. He also raises the confessor-penitent privilege with respect to interrogatory number fourteen.

In an April 16, 2012, letter to Shabazz, Arandell asserts that the common interest privilege did not apply to interrogatory number three. (Jones Decl. ¶ 7, Ex. E.) The letter did not mention interrogatory number fourteen. (*Id*. at Ex. E.) During Shabazz's deposition, Arandell raised his assertion of the common interest privilege in response to interrogatory number three. (Jones Decl. ¶ 32, Ex. F, 17.) The following dialog ensued:

> Q . . . . What is your basis for saying we don't get those documents.
>
> A. This is the one that I objected to,
>
> Q. Why do you object to it? We're asking about documents that reflect communications you've had about the things in your Complaint. What is your basis for objecting to that?
>
> A. On the grounds of common interest privilege.
>
> Q. And what –
>
> A. For me and . . . Jordan and his attorney.
>
> Q. Well he is only one person referenced here. It says "all." Any current or former employees, supervisor, etc.. Other than . . . Jordan and your common interest privilege, what other basis do you have to object to this?
>
> A. My other objections would be that I don't believe that it's pertinent to the case.
>
> Q. If it's about something raised in your Complaint, how is it not pertinent to the case?

(*Id.*, Ex. F, 17.)

As applied to this action, Federal Rule of Evidence Rule 501 provides that the common law –– as interpreted by the United States Courts in the light of reason and experience governs a claim of privilege. Because testimonial privileges contravene the fundamental principle that the public has a right to every person's evidence, privileges must be strictly construed so as to be applied only to the very limited extent that "excluding relevant evidence has a public good transcending the normally predominant principle of utilizing all rational means for ascertaining truth." *Trammel v. United States*, 445 U.S. 40, 50 (1980).

Although occasionally termed a privilege itself, the common interest doctrine is an exception to the rule that no privilege attaches to communications between a client and an attorney in the presence of a third person and that the common interest doctrine only applies where the parties undertake a joint effort with respect to a common legal interest, and the doctrine is limited strictly to those communications made to further an ongoing enterprise. *United States v. BDO Seidman, LLP*, 492 F.3d 806, 816 (7th Cir. 2007). Although Shabazz is not represented by counsel in this action, he has been communicating with Robert Jordan and his attorney. (Jones Decl. ¶ 32, Ex. F, 17.)

Based on the limited information provided, this Court cannot determine whether the common interest doctrine applies. Shabazz has the burden of establishing applicability of the doctrine. By the stated deadline, Shabazz must file a statement setting forth facts that he believes establish that the common interest doctrine applies to the information sought by

11

interrogatories number three and fourteen. Arandell will have an opportunity to respond. Thereafter, the Court will issue an order resolving the issue.

The confessor-penitent privilege Shabazz invokes, more appropriately referred to as the clergy-penitent privilege, *see United States v. Dubé*, 820 F.2d 886, 889 (7th Cir. 1987), is limited to private communications rooted in confidence and trust which protects disclosures to a spiritual counselor, in total and absolute confidence, of what are believed to be flawed acts or thoughts to receive priestly consolation and guidance in return, and does not apply to all conversations with clergy. *See id* at 889-90. The privilege does not protect the identity of the clergy with whom Shabazz consulted. Thus, Shabazz must respond to interrogatory number fourteen.

Interrogatory number five asks Shabazz to identify employment that he has had since December 1, 2010, and related information. Interrogatory number six asks Shabazz to identify employers, including staffing agencies, where Shabazz discussed and/or applied and related details. Interrogatory number eight asks that Shabazz disclose all income that he has received since December 1, 2010. Shabazz seeks to recover lost wages. (Jones Decl. ¶ 5, Ex. D, Ans. Interrog. No. 7.) The information sought by interrogatories numbers five, six, and eight are relevant to that damage claim. Therefore, Shabazz must respond fully to those interrogatories by the stated deadline.

Interrogatory number nine asks that Shabazz identify all health care professionals or personal or spiritual advisers with whom he has consulted or contacted or

12

from whom he has received services related to the pain and suffering that he claims to have sustained due to the incidents alleged in the Complaint. Shabazz responded "confessor-penitent" privilege. Shabazz's response implies that, with respect to his claimed pain and suffering as a result of the experiences set forth in the Complaint, he has consulted with a spiritual advisor and no other personal or health care professional.

As previously indicated the clergy-penitent privilege, *Dubé*, 820 F.2d at 889-90, does not protect the identity of the clergy with whom Shabazz consulted. It also does not protect the suffering and pain that Shabazz experienced due to the claimed conduct of others. Thus, Shabazz must respond fully to interrogatory number nine.

### Deposition

Arandell's motion also relies upon Shabazz's failure to respond to some questions during his deposition. Shabazz's deposition lasted from 9:55 a.m. until 4:29 p.m. and the deposition transcript exceeds 197 pages. And, Shabazz answered many of the questions presented by Arandell's counsel.

Arandell asserts that Shabazz did not answer over a dozen questions. However some of those questions while proper, were also repetitious. Moreover, the transcript itself reveals that the tone of Aranell's questioning of Shabazz was disrespectful and harsh. After dispensing with preliminary instructions, Arandell began questioning Shabazz in a highly confrontational manner about when he would provide its outstanding discovery demands. (Jones Decl. ¶ 32, 7-21.)

13

While attorneys differ in deposition style, this confrontational style, particularly with a pro se litigant, was lacking in civility and ill-advised. As stated in the Standards for Professional Conduct Within the Seventh Federal Judicial Circuit, "[c]onduct that may be characterized as uncivil, abrasive, abusive, hostile, or obstructive impedes the fundamental goal of resolving disputes rationally, peacefully, and efficiently. Such conduct tends to delay and often to deny justice." Shabazz's responses may have been, at least in part, attributable to the tone of Arandell's counsel when questioning Shabazz.

The following exchange is illustrative – however, it is simply an example – which although relied upon by Arandell as a basis for sanctions also shows the unflattering mode of questioning. Arandell highlights Shabazz's failure to answer the following question regarding a document regarding liberalism that he provided during initial disclosures , "Do you understand that liberalism is a political ideology?" (Mem. Mot. Dismiss or Compel, 7-8. (quoting Jones Decl. ¶ 32, Ex. F at 73:7-15; 74:1-25, 75:1-25; 76:1-3).)

Shabazz responded:

> A. "I understand that there is an epidemic off hazing and bullying in America and –
>
> Q. [Counsel] Mr. Shabazz.
>
> A. — this is an example of it right here.
> Q. — my question is –
>
> A. That's what I understand.
>
> Q. My question is do you understand that liberalism is a political ideology? Separate from the document, do you understand that?

A. I object.

Q. Based on what?

A. You're trying to lead me on to an answer I don't want to go down.

Q. Well, as opposing counsel, I am allowed to ask leading questions. So yes or no, do you understand that liberalism is a political ideology?

A. I object.

Q. Yes or no?

A. I object?

Q. So, you're going to object because you don't want to answer the question, because you don't like the answer you are going to have to give?

A. I did answer. I object to the line of questioning.

Q. If you've gone to paralegal school, Mr. Shabazz, you understand that there is a difference between answering a question and objecting to them.

(Jones Decl. ¶ 32, Ex. F. 74:21-75:25.)

The foregoing passage reveals that counsel did not get the desired answer and kept on reiterating the question instead of shifting to another area of questioning. As to the question, Shabazz was correct that he had answered it.

However, there were relevant questions that Shabazz should have answered. Shabazz declined to answer whether he had sued another employer. That question may lead to the discovery of admissible evidence and must be answered. Shabazz must also respond

15

to whether his name has been changed from that listed on his birth certificate and whether he has used other names.

Shabazz refused to answer questions regarding whether he had ever been convicted of a crime. Federal Rule of Evidence 609(a) provides that for "attacking a witness's character for truthfulness by evidence of a criminal conviction . . . for a crime [i.e., one punishable by death or by imprisonment for more than one year] the evidence must be admitted, subject to Rule 403, in a civil case. Fed. R. Evid. 609(a). The court of appeals has explained, the rationale for allowing a prior crime to undermine the testimony of a witness's testimony "is that a person who has committed a serious crime is more likely than a law-abiding person to lie on the stand even if the case in which he is testifying has nothing to do with that crime." *Schmude v. Tricam Indus., Inc.*, 556 F.3d 624, 627 (7th Cir. 2009). While that rationale is "underinclusive," and the rule itself "controversial," *id.* at 627-28, the language chosen by Congress indicates that admission of prior felonies is mandatory unless the concerns captured by Rule 403 (which are incorporated directly into Rule 609(a)) provide a trump card. Thus, Shabazz must answer the questions.

Shabazz must also respond to Arandell's question regarding whether he is still seeking damages for pain and suffering. That question and related questions pertain to his claims for relief and are relevant.

Arandell also asked Shabazz whether he is currently working and where he has worked since leaving Arandell. Shabazz is seeking back pay. The answers to Arandell's

16

questions are relevant the amount of claimed damages. Therefore, Shabazz must answer them.

Shabazz must also respond questions regarding the locations of evidence that is relevant to his lawsuit – the second of two notebooks, a three-ring binder that he keeps collected items which were taped to the wall or on the forklift truck, documentation relating to employment applications he has submitted after December 21, 2012, and the computer that has photographs that Shabazz states were taken at the plant. The answers to such questions are relevant to his lawsuit and must be answered by Shabazz.

Given the problems with discovery in the case, before ordering Shabazz to reappear for his deposition, the Court will require the parties must file a report regarding the status of their compliance with this Order; and, Arandell must file an estimate of how much additional time it believes is necessary to complete Shabazz's deposition. Furthermore, based on the circumstances presented, an award of attorney's fees is inappropriate and, therefore, that request is denied.

**NOW, THEREFORE, BASED ON THE FOREGOING, IT IS HEREBY ORDERED THAT**:

Arandell's motion to dismiss or to compel compliance with the Court's February 15, 2012, Order (ECF No. 34) is **DENIED** as to dismissal and **GRANTED** as to compliance with that Order as follows:

17

No later than **August 15, 2012**, Shabazz must file a brief statement providing additional facts to support the application of the common interest doctrine to interrogatory number three;

No later than **August 31, 2012**, Arandell may file a brief response to such statement;

No later than **August 15, 2012**, Arandell must provide Shabazz with revised medical releases for period from January 1, 2002, to the present;

No later than **August 20, 2012**, Shabazz must respond fully to Arandell's first request for production of documents, including executing the revised medical releases;

No later than **August 31, 2012**, Shabazz must respond fully to interrogatories numbers five, six, eight, nine, and fourteen of Arnadell's first set of interrogatories;

No later than **September 15, 2012**, the parties must file a report regarding the status of their compliance with this Order; and, Arandell must file an estimate of how much additional time it believes is necessary to complete Shabazz's deposition;

Upon review of the status report, the Court will issue additional orders as appropriate; and,

18

Any remaining dates or deadlines in this action are **STAYED** until further order of this Court.

Dated at Milwaukee, Wisconsin this 3rd day of August, 2012.

**BY THE COURT**

**Hon. Rudolph T. Randa**
**U.S. District Judge**